————o————

DAVID A. ELY, Receiver of JOHN W. OWNBY, Respondent, *vs.* JOHN W. OWNBY, Appellant.

1. *Referee's report may be reviewed, how.*—Where the referee reports the evidence, the Circuit and Supreme Courts may review and correct his finding.
2. *County collector—Sale of land of—Purchase by his assignee, who turned out to be owner—Purchase money to be credited to assignee in trust settlement, etc.*— Certain land having been sold on an execution against a defaulting county collector which was purchased by his assignee, *held*, that in equity, if the title to the land turned out to be in the assignee, he should be credited with the purchase money in the settlement of his trust; but otherwise, if it proved to belong to the collector, and that the credit of the assignee should be proportioned to the extent of his ownership.
3. *County collector—Suit on bond of—County warrants of collector in hands of third parties obtained by receiver before his appointment, and afterward, from persons not garnished.*—In suit by the county on a defaulting collector's bond

attachment was obtained and various persons were garnished, and after judgment for the county, a receiver was appointed. A day or two prior to his appointment, the receiver, who, with sundry others, was surety on the collector's bond, had compromised a claim against him, and obtained from the creditor certain county warrants which the collector had made over to secure his indebtedness, giving the creditor in settlement the joint note of himself and his co-sureties. After his appointment and in the course of his investigations, the receiver had obtained other county warrants of the collector, in the hands of persons not named as garnishees; *held,* that notwithstanding these facts, the receiver should, in his settlement, be charged with the warrants so obtained. He occupied a position similar to that of a sheriff in an attachment case, where certain parties named are garnished, and he is directed to summon such other parties as the plaintiff may name as having property in their hands subject to the execution. The fact that a portion of the warrants were procured before his appointment as receiver is unimportant, except that he ought to be allowed for money which he paid to procure the warrants. When procured, he held them as receiver; and so in regard to warrants subsequently acquired.

## *Appeal from Adair Circuit Court.*

*Harrington & Cover, with D. S. Hooper,* for Appellant.

I. The effect of the attachment in the suit of Adair county vs. Ownby was to attach all the property received by Ely. (Wagn. Stat., 185, § 23, clause 5; *Id.,* p. 664, § 4.)

II. Ely could not have received the Reed warrant in any other capacity than that of Receiver. Reed was garnisheed long before the appointment in the case of Reed vs. Ownby. And the suit of Reed v. Ownby was not dismissed till five days after the appointment.

*Ellison & Ellison,* for Respondent.

I. The Reed warrants were purchased by the sureties with their note prior to the appointment of the receiver, and he is responsible to them for these warrants. As receiver he could only take such warrants as were in the hands of the garnishees. The Chandler, Smith and Ringo warrants were never attached.

NAPTON, Judge, delivered the opinion of the court.

The record in this case is three hundred pages of manuscript, containing long accounts, consisting of a multitude of items, a referee's report, which details all the evidence be-

fore him, and a statement of the facts which, in his opinion, the evidence established exceptions to this report, and the action of the Circuit Court on the exceptions.

From this manuscript volume we have to gather the facts and the points of exception. It is difficult under such circumstances, and in such an investigation, to feel assured that mistakes have not been committed, especially as to the details; and to determine the propriety of the action of the Circuit Court in the review of the report of the referee, requires an examination of the testimony upon the points on which the court disregarded the opinion of the referee.

The record begins with a report of Ely as receiver of John W. Ownby, in the case of Adair County vs. John W. Ownby and others. To this report objections are filed on both sides, and ultimately the matter is referred to Mr. Higbee as referee. Mr. Higbee, the referee, reports all the evidence, and then gives his conclusions as to the facts the proof established. His conclusion is that, on the evidence submitted, Ely is chargeable with $10,679.06, and that he ought to be credited with $8,493.50, leaving a balance in his hands of $2,185.56.

To this report exceptions are taken, both by Ownby and Ely, and the Circuit Court, at the instance of Ownby, rejects an item of $990.60, which the referee allowed Ely, and also rejects items allowed against Ely amounting to $2,436.77, and and thereby reduces the amount chargeable to Ely to $729.45.

And then the finding of the court is that in July, 1869, the said Ownby, for the purpose of indemnifying and securing the said Ely and his co-sureties against any liability or expenditure of money on the capture, settlement, etc., of his, said Ownby's, default to the county of Adair and State of Missouri, assigned and set over to said Ely, under a seal, all the remainder of his assets, of which, after paying all and every expense and liability of said Ely and co-sureties growing out of said Ownby's default and liabilities, the balance, if any, the said Ely shall pay to said Ownby.

The court therefore further orders and adjudges that said Ely, as assignee under the said assignment made in 1869, hold the balance of said funds for the benefit of himself and

co-sureties on said Ownby's official bond, and, after paying all just claims of said Ely and his co-sureties, that the balance be paid to Ownby by said Ely.

It appears from the record that Ownby was sheriff and collector of Adair county in July, 1867, and had been for several years before that. He was a defaulter at that date for a large amount due the State, estimated at $14,000, and to the county for an amount supposed to be about $6,000, and he absconded in February, 1867. Ely, and some fifteen or twenty others, were sureties on his official bond. Two of these sureties, Ely and Harlam, pursued Ownby into the Indian Territory, and brought him back to Adair county, incurring thereby a considerable expense.

Suit was instituted on this bond of Ownby as sheriff, and an attachment obtained, and various persons were garnished. Judgment was rendered against Ownby and his sureties, at the May term, 1867, for $6,000, and this judgment was allowed to be satisfied by county warrants. Upon the rendition of this judgment, Ely was appointed receiver, and it was in regard to his report as receiver that a referee was appointed, and the result of the referee's report is as heretofore stated.

It appears that after Ownby's return he was indicted for embezzlement, and whilst this indictment was pending he made an assignment of all his property to Ely. The validity of this assignment was questioned, on the ground that it was fraudulently obtained, but the question of its validity is not involved in this case, and so the referee considered.

Ely and Harlam, another surety of Ownby, went to Jefferson City and there expended a considerable amount of money in procuring a bill releasing Ownby's sureties from the $14,000 due the State. The amount of money thus expended was included in Ely's settlement, but this sum was not allowed by the referee, nor by the court, nor was the sum expended by Ely and Harlam in the capture of Ownby allowed.

The questions presented by the record are therefore confined to the decisions of the Circuit Court, in striking out from the report of the referee one item, allowed to Ely, and in striking out certain items allowed against Ely, and thereby

reducing the judgments to $729.45, and in allowing this sum to be retained by Ely, as assignee, (under the disputed assignment referred to) to indemnify him against the expenditures he had incurred, as the surety of Ownby, in capturing him, and in getting his bill for relief passed through the legislature.

The item with which Ely credited himself, and which the court rejected, although the referee allowed it, was for $990 and originated in this way: Ownby and Dr. Lee bought ten acres of land of one Dodson, and Dodson made a deed to them and handed it to Dr. Lee. After Ownby's defalcation and desertion of the country, Ely, as assignee of Ownby, sold the land to one Brown for $100, in 1868, and a few days thereafter took a deed from Brown, for which he paid $400. The land was then sold on an execution against Ownby and his sureties, Ely being one, and Ely bought the land for $960, and laid it out in town lots as an addition to Kirksville, and this $960 is the sum, with some interest which he credited himself with on his settlement, and which is allowed by the referee, but rejected by the Circuit Court.

As the referee reported to the court all the evidence on which he acted, there can be no question that the court could review his conclusions, and correct them when erroneous.

And this court must determine the point in controversy, as the Circuit Court would upon the evidence reported.

It is impossible, however, for this court to say definitely whether this credit to Ely should have been allowed, or how much of it should been allowed, on the facts disclosed in this record. The execution was against Ownby, Ely, Dodson and Lee, and all the right and title of these defendants was sold. If Ownby was the owner of the land, then it is plain that Ely was entitled to no credit for the $990 he paid on the execution, as the result would be that Ownby's land went to pay his debt. But if Ownby did not own the land, and Ely did, then Ely would be entitled to this credit.

It appears from the case of Ownby vs. Ely, decided by this court at its last term, that Ownby only claimed to own half of the land. We cannot judicially know that this case was in regard to this same land, but upon the supposition that it

was; then Ely was entitled to credit for the half of the sum he gave at the sale; that is, the half of $990. This, however, is merely conjectural, as the title really depends on the result of the suit to which reference has been made.

The referee allowed the whole sum on the ground that the title to the whole land was in Ely, as it seemed to be at the date of his report, and this opinion was right, if the premises on which it was based were sustained, since it would then be apparent that Ely's money went to satisfy Ownby's indebtedness. But if it turned out that Ely owned only one-half interest, and Ownby the other half, then in equity, Ely should be credited with only one-half of the sum he bid at the sale.

The Circuit Court sustained the objections to the warrants turned over by Reed and to the Chandler, Ringo and Smith warrants, allowed by the referee.

It seems from the evidence that Ownby owed Reed, at the time he left the State about $800, and placed in the hands of Reed, county warrants amounting to $1,700, one of which was to the amount of §1,100. Reed instituted a suit against Ownby on his indebtedness, and attached this warrant of $1,100—which was totally unnecessary, as he already had it in possession. However, Ely and a number of Ownby's sureties compromised with Reed and assumed Ownby's debt to Reed, and Reed turned over to them all the warrants and other evidences of debt he received from Ownby, upon their giving a joint note for the $800 which they owed Reed.

And those warrants obtained from Reed, and the three others which Ely subsequently obtained, are deducted by the court from the charges which the referee allowed.

The ground upon which these charges are deducted seems to be that Ely bought the warrants from Reed a day or so before he was appointed receiver, and obtained other warrants through his investigations a long time after he was appointed as receiver, and that the parties in possession of the warrants were not garnished in the case wherein he was appointed receiver.

The receiver in the case occupied a position similar to that of the sheriff in an attachment case where certain parties

named are garnished, and the officer is directed to summon such other parties as the plaintiff might name as having property in their hands subject to the execution. The fact that the Reed warrants were procured before the appointment of Ely as receiver, by a purchase from him, is of no importance, except that he ought to be allowed for the money he paid to procure these warrants. When procured, he held them as receiver, and so in regard to other warrants he may have subsequently acquired.

The court therefore erred in striking out the total amounts of the Reed warrants and the warrants of Chandler, Ringo and Smith, which ought to have been charged to Ely, deducting the $800 which he and his co-sureties paid to procure from Reed the property turned over to them.

We are unable to see why the judgment of the court authorized Ely to hold the money adjudged against him, subject to an assignment upon which there was a dispute as to its validity. Upon this point no opinion was expressed by the court, unless the decree may be so considered, nor is any opinion expressed here. The parties have not presented any issue upon this question. Nor have they claimed any allowance for their expenses in capturing Ownby or in procuring the passage of a law at Jefferson City exempting the sureties from their liability to the State, in a shape in which such claims could be considered. The decision of these questions depends on the validity and interpretatation of an assignment made in 1869, which is only incidentally referred to in this case. We give no opinion upon this assignment, for we have no facts in regard to it before us, nor is its validity or invalidity a question in this settlement.

The judgment was not in conformity to these views and will therefore be reversed and the cause remanded; the other judges concur.